(No. 32715.—

CHICAGO PARK DISTRICT *vs.* DOWNEY COAL COMPANY, Appellee.—(JOHN B. BRENZA, County Treasurer, Appellant.)

*Opinion filed September 24, 1953—Rehearing denied Nov. 16, 1953.*

JOHN GUTKNECHT, State's Attorney, of Chicago, (GORDON NASH, and VINCENT P. FLOOD, of counsel,) for appellant.

STIEFEL, GREENBERG & BURNS, of Chicago, for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is an action in condemnation brought by the Chicago Park District against the Downey Coal Company, an Illinois corporation and defendant-appellee. Defendant coal company obtained an order of the circuit court of Cook County directing John B. Brenza, county treasurer of Cook County, with whom the condemnation award had been deposited, to pay the balance of the award to the coal company without a deduction for the lien of 1952 general real-estate taxes. Treasurer Brenza prosecutes an appeal directly to this court, a question of revenue being involved.

May 11, 1951, a petition for condemnation was filed in the circuit court of Cook County by the Chicago Park District, a body politic and corporate, for the purpose of condemning, for corporate purposes, certain property in the city of Chicago then owned by defendant-appellee, Downey Coal Company. On May 16, 1952, a judgment order was entered setting the award in condemnation at $70,000, which

amount was on that day deposited with the county treasurer, John B. Brenza, in accordance with the order.

On June 6, 1952, the Downey Coal Company filed a verified petition for pay out before the trial court, praying for an order directing the county treasurer to pay to it all or part of said compensation. The court, on that date, ordered the county treasurer to pay to the Downey Coal Company $66,500 from the award, retaining $3500 as security for general real-estate taxes until further order of the court. The county treasurer paid the Downey Coal Company in compliance with the order of the court.

June 9, 1952, the county treasurer answered the petition of the Downey Coal Company filed June 6, denying that the petition accurately stated the lien of general taxes on the premises condemned, and alleged that on April 1, 1951, the general taxes for the year 1951 became a lien on the premises condemned, and that on April 1, 1952, general taxes for the year 1952 became a lien against said premises. The county treasurer further asserted that by virtue of section 28 of the Revenue Act of 1939, (Ill. Rev. Stat. 1951, chap. 120, par. 509,) the coal company became liable for general taxes for 1952 and that by operation of law the lien was transferred to the condemnation award upon entry of condemnation judgment and deposit of award. The trial court then ordered the county treasurer to credit to the account of taxes levied against these premises from the award on deposit with him the sum of $1082.35, the balance due for real-estate taxes for 1951. After a hearing on the petition and answer, the county treasurer was ordered to pay the balance of the award remaining in his hands to the coal company.

It is provided by the section of the Revenue Act in question that: "The owner of property on the first day of April in any year shall be liable for the taxes of that year. The purchaser of property on the first day of April shall be considered as the owner on that day."

Relying upon this statute, the county treasurer contends that on April 1, 1952, the Downey Coal Company owned the property and the taxes for 1952 consequently constituted a lien against the award subsequently entered on May 16, 1952, and deposited with him. It is true, as contended by the county treasurer, that the title to property which is the subject of condemnation proceedings does not vest in the condemner until the judgment fixing just compensation is entered and paid. (*Chicago and Iowa Railroad Co.* v. *Hopkins,* 90 Ill. 316; *Chandler* v. *Morey,* 195 Ill. 596; *People ex rel. Stuckart,* v. *Price,* 282 Ill. 519.) It is equally true, however, that the title acquired by the condemner upon payment of the award in condemnation relates back to the date on which the petition, in case of proceedings under the Eminent Domain Act, or the report of commissioners under the Local Improvement Act, is filed. (*City of Chicago* v. *McCausland,* 379 Ill. 602.) Therefore, while the condemnation award was deposited with the county treasurer on May 16, 1952, and the Chicago Park District was on that date vested with the title to this property, the title then vested related back to May 11, 1951, when the petition for condemnation was filed.

This same problem plagued this court in the *McCausland case,* although the condemnation proceeding there arose under the Local Improvement Act instead of the Eminent Domain Act. The procedures in the exercise of eminent domain under the Local Improvement Act and under the Eminent Domain Act are considered and compared in that case. No basis appears there for regarding the lien of taxes accruing after the filing of the petition by separate and contrary rules.

It is stated in the *McCausland case* that "Under the law the value of property taken under the Local Improvement act is fixed as of the date on which the reports of the commissioners are filed fixing such compensation." That language, considered in the light of existing legal principles

and in the context from which it is torn, obviously does not mean that the award is determined on the date the commissioners' report fixing compensation is filed. The true meaning is that the date of the filing of the commissioners' report is the date to which the court looks in determining the value of the property to be condemned. It is the value on that date the court seeks to determine in making its award. The *McCausland case* does not lay down a rule contrary to the usual one in condemnation proceedings —that the value is not determined and awarded until there is a verdict by the jury or court and an entry of a judgment on the verdict, and that only on payment of award or deposit thereof does title vest in the condemner.

It is provided in the local improvement provisions of the Revised Cities and Villages Act, (Ill. Rev. Stat. 1951, chap. 24, pars. 84-12 to 84-30,) that whenever a proposed local improvement shall require the taking or damaging of property, some .officer of the municipality shall be designated to file a petition in a court of record praying that steps may be taken to ascertain the just compensation to be made for private or public property to be taken or damaged. Upon the filing of the petition the court shall enter an order designating two competent persons as commissioners to act with either the superintendent of special assessments or the president of the board of local improvements, to investigate and report to the court the just compensation to be made to the respective owners of the property to be taken or damaged. These commissioners shall file a report with the court stating the amount they award for damages and value. It is provided that the return and filing of this report shall be deemed an application by the petitioner for judgment of condemnation of the property so to be taken or damaged. After return of summons served upon all owners of such property, the court shall impanel a jury to ascertain the just compensation to be paid all owners of property to be taken or damaged. Any final judgment ren-

dered by a court upon any finding of any jury, or of any judge on waiver of jury, shall be lawful and sufficient condemnation of the land or property to be taken, upon payment of the net amount of the finding.

Under the Eminent Domain Act, (Ill. Rev. Stat. 1951, chap. 47, pars. 1-17,) it is provided that private property may be taken for public use by the filing of a petition in a circuit or county court of the county where the property is located, praying such court or judge to cause the compensation to be paid to the owner to be assessed. A jury may be impaneled to determine the compensation. The order of the court or judge setting the compensation award, and the payment of such award, shall constitute complete justification of the taking of such property.

It is the filing of the report of the commissioners under the Local Improvement Act, and filing of the petition in condemnation under the Eminent Domain Act that really starts the condemnation proceedings to determine the award. It is to that time that the title, when vested, relates back.

No reason appearing why the taxes levied subsequent to the commencement of condemnation proceedings shall be treated any different as to there being a lien upon the award entered, under either the Local Improvement Act or the Eminent Domain Act, there is no reason why the principles enunciated in the *McCausland case* should not be applied here. That opinion continued, saying, "It has been held in other eminent domain cases that liens accruing after the date for fixing the value has passed, are subject to being avoided by the completion of title on payment of the award. To permit taxes of subsequent years to be charged as a lien against just compensation for land, title to which relates back to a time before their assessment, would infringe the constitutional provision that property shall not be taken for public use without just compensation." The "date for fixing value" here referred to is the date for filing of the report of commissioners fixing compensation as explained

previously. That date, as we have seen, compares to the date of the filing of the petition to condemn in proceedings under the Eminent Domain Act. On the deposit of the award with the county treasurer on May 16, 1952, the title since May 11, 1951, to these premises vested in the Chicago Park District. At the time of the deposit of this award the title as of April 1, 1952, was considered to be in the Chicago Park District, and hence any lien for taxes levied on that date could not be a lien against the award as such. We are of the opinion, therefore, that the taxes for the year 1952 may not be deducted from the award deposited as paying for the value determined as of May 16, 1952, and the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*