**The City of HAMMOND, a Municipal Corporation, Appellant–Defendant,**

v.

**GRAOCH ASSOCIATES # 52, L.P., a Washington Limited Partnership, d/b/a River Park Apartments, Appellee–Plaintiff.**

No. 45A03–0809–CV–455.

Court of Appeals of Indiana.

July 23, 2009.

Rehearing Denied Sept. 30, 2009.

---

David W. Westland, Jack A. Kramer, Tara K. Tauber, Tauber Westland & Bennett P.C., Schererville, IN, Attorneys for Appellant.

Gary K. Matthews, Enslen, Enslen and Matthews, Hammond, IN, Attorney for Appellee.

## OPINION

MAY, Judge.

In 2005, the City of Hammond condemned an apartment complex owned by Graoch Associates # 52 L.P. The City and Graoch agreed to prorate Graoch's 2005 property taxes based on the 2004 bill. The City received a credit and agreed to pay Graoch's tax bill when it came due. After the condemnation was complete and the compensation was paid, we decided *Southtown Properties, Inc. v. City of Fort Wayne*, 840 N.E.2d 393 (Ind.Ct.App.2006), *trans. denied* 855 N.E.2d 1010 (Ind.2006). Graoch believed that, pursuant to *Southtown*, it owed no property taxes for 2005, and therefore sought to recoup the money credited to the City. Graoch obtained a declaratory judgment against the Lake County Assessor, Treasurer, and Auditor (collectively, "Lake County") that Graoch did not owe 2005 property taxes. The trial court also ordered judgment against the City, finding the money credited for payment of taxes had to be returned under theories of mistake, unjust enrichment, failure of consideration, and money had and received.

We conclude the trial court erred by applying *Southtown* to this case. Because *Southtown* does not apply, Graoch does owe property taxes for 2005. We reverse

the judgment of the trial court and remand for a hearing on attorney fees and costs.

## FACTS AND PROCEDURAL HISTORY

Graoch owned property in Hammond commonly known as River Park Apartments. Graoch had a "very contentious" relationship with the City. (Tr. at 18.) The City felt River Park was responsible for a disproportionate amount of crime and safety issues, but Graoch felt the City was unfairly targeting River Park. Graoch filed several lawsuits against the City.

When Thomas McDermott, Jr., ran for mayor of Hammond, one of his campaign promises was to close River Park. McDermott was elected, and he contacted Graoch about acquiring the property. Graoch was not interested in selling because it would owe a substantial prepayment penalty on its mortgage.

The City and Graoch then began negotiating a global settlement agreement that would resolve the lawsuits pending against the City and transfer the property to the City via condemnation proceedings. The City filed a condemnation petition on January 27, 2005, and an agreed order was entered the next day. The agreed order provided the City would pay Graoch $14,247,500 for the property, subject to the rights of lien holders.

On November 28, 2005, the parties entered a Proration Agreement that addressed several issues regarding the operation of River Park while the City was in the process of appropriating funds to pay Graoch. At issue in this appeal is the provision of that agreement concerning payment of property taxes:

> Graoch shall pay all [property taxes] that accrued prior to the date of Condemnation Funding, and the City shall pay all such amounts accruing on or after the date of Condemnation Funding.... In the event that a current statement of taxes or assessments applicable to the Property are [sic] not available for the current year, such taxes and assessments shall be prorated based upon the last ascertainable tax bill or assessment statement, and the taxes and assessments shall NOT be re-prorated between the parties upon issuance of the actual tax bill or assessment statement.

(Plaintiff's Ex. 10 at 2.)

Closing was on November 30, 2005. At that time, the 2005 property tax bill was not available. Pursuant to the Proration Agreement, property taxes were prorated based on the 2004 bill. The City was given a credit of $259,140.92 with the understanding that it would pay Graoch's 2005 property tax bill when it came due.

On January 13, 2006, this Court decided *Southtown,* in which we held that for purposes of determining liability for property taxes, the condemning authority's title relates back to the date the condemnation petition was filed. Under *Southtown,* Graoch would not be liable for 2005 property taxes because the City filed its condemnation action on January 27, 2005, which is prior to the assessment date. *See* Ind.Code § 6–1.1–1–2(1) (property tax assessment date is March 1). After *Southtown* was decided, Graoch asked the City to return the money Graoch had paid toward 2005 property taxes, but the City refused.

On September 14, 2006, Graoch filed suit against the City. On May 23, 2007, Graoch filed an amended complaint that added the Lake County Treasurer, Auditor, and Assessor as defendants. The amended complaint requested a declaration that no property taxes accrued in 2005 and sought the return of the $259,140.92 on theories of mutual mistake, unjust enrichment, and breach of contract.

On August 29, 2008, the trial court entered judgment for Graoch. The trial

court concluded that *Southtown* applied, and therefore Graoch did not owe property taxes for 2005. The court ordered Lake County to "conform [its] records accordingly and remove [Graoch] from any such tax liability shown on [its] records." (Appellant's App. at 22.) The court found the Proration Agreement "ambiguous in that it made no provision for what would happen if Graoch did not owe any real estate taxes for 2005. It is further ambiguous in that it refers only to the proration of taxes which 'accrued,' and it refers only to paying taxes upon the actual tax bill being issued." (*Id.* at 15.) The court found the parties were mutually mistaken in their belief that Graoch would owe property taxes in 2005 and that those taxes would be a lien on the property. The court concluded the "law is with Graoch and against the City of Hammond on Graoch's claims for declaratory relief, restitution, unjust enrichment, failed consideration, and money had and received," (*id.* at 22), and entered judgment against the City in the amount of $259,140.92 plus costs and prejudgment interest.

## DISCUSSION AND DECISION

The trial court entered findings of fact and conclusions of law pursuant to Ind. Trial Rule 52. Our standard of review in such cases is well-settled:

[W]e apply the following two-tiered standard of review: whether the evidence supports the findings and whether the findings support the judgment. The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. We review conclusions of law *de novo.*

*Staresnick v. Staresnick,* 830 N.E.2d 127, 131 (Ind.Ct.App.2005) (citations omitted), *reh'g denied.*

■ This case requires us to determine whether *Southtown* applies retroactively to condemnations that were completed before *Southtown* was decided.[1] On October 30,

---

1. Graoch argues the City has waived its argument that *Southtown* does not apply retroactively because the City did not oppose its application below. The record belies that contention. After Graoch rested, the City moved for involuntary dismissal, arguing Graoch had not established "mutual mistake, unjust enrichment, [or] money had and received." (Tr. at 95.) Graoch responded, and the City stated the following in rebuttal:

   As Mr. Matthews [counsel for Graoch] said in his opening statement, the *Southtown* decision in January of 2006 was one of first impression. The state of the law on November 30, 2005 was that title vest[s] upon funding. Okay. So if title vest[s] upon funding, which was November 30, 2005, that's your date for proration.

   *     *     *     *     *     *

   But on November 30, the date this was done there was no mistake. The state of

   the law in the State of Indiana at that time was title vest[s] for tax purposes as of the date of funding.... It was only because two months later the Court of Appeals decided a decision, the *Southtown* decision, and they want that applied retroactively. Are they now arguing a mistake?

   (*Id.* at 101.)

   Graoch further argues the City waived its right to challenge application of *Southtown* because the issue should have been raised as a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Ind. Trial Rule 12(B)(6). We note the City's answer to the complaint alleged, as an affirmative defense, that Graoch failed to state a claim. Furthermore, T.R. 12(H)(2) provides, "A defense of failure to state a claim upon which relief can be granted ... may be made in any pleading permitted or ordered under Rule 7(A), or by motion for judgment on the pleadings, or at the trial on the merits."

2003, the City of Fort Wayne filed a petition to condemn property owned by Southtown Properties, Inc. The Allen County Auditor and Treasurer were named as parties due to tax liens on the property. Allen County sought $241,804.87 for delinquent 2002 taxes and for estimated 2003 and 2004 taxes. The trial court determined Allen County was entitled to that amount and its participation in the proceedings was no longer required. A trial was held September 13 to 16, 2004, to determine just compensation. Fort Wayne tendered the award sometime thereafter.

Southtown appealed, arguing it should not be liable for 2004 property taxes. The holder of the legal title in fee on March 1 of any year is liable for the real estate taxes assessed for that year.[2] Therefore, we had to determine whether Southtown held legal title in fee as of March 1, 2004.

In concluding that Southtown was liable for 2004 taxes, the trial court relied on *Lake Erie & Western Railway Co. v. Kinsey,* 87 Ind. 514 (1882). We summarized *Kinsey* as follows:

> In *Kinsey,* a railroad company filed a condemnation action, paid the $50.00 awarded by the appraisers, and took possession of the land. After the landowner filed his exceptions to the appraisers' award, a jury trial was held and just compensation was determined to be $790.00. The railroad company refused to pay the higher amount, but also refused to vacate the land. The landowner filed suit for possession, and the trial court entered judgment in his favor. On appeal, the railroad company argued that title passed on the day it paid the $50.00 appraiser's award and that the landowner's only remedy was to attempt to enforce the judgment for compensation, not to retake possession.

Our Supreme Court held:

> The payment of the amount awarded by the appraisers gives the corporation a right to the immediate possession and a *prima facie* claim to the land subject to an appeal in ten days after the award is filed. If no appeal is taken, at the end of the ten days the title vests and relates back to the date of payment. If an appeal is taken no title vests, and the corporation has no greater right than that of a license under the statute to hold possession and proceed with the construction of its road pending litigation. When the compensation has been finally fixed on appeal, then the corporation must pay or tender the compensation so fixed, and on failure to do so it acquires no title to the land, and its license to hold possession and prosecute its work ceases. Just compensation must be first made or tendered. The verdict of the jury and the judgment of the court determine what that just compensation is.
>
> \*     \*     \*     \*     \*     \*
>
> The amount found due on appeal must be paid or tendered before the title passes.

*Southtown,* 840 N.E.2d at 407–08 (quoting *Kinsey,* 87 Ind. at 514).

Based on *Kinsey,* Allen County argued Fort Wayne's title did not vest until it paid just compensation as determined by the jury, and that at most, title could relate back only to the date it tendered the appraisers' award. Fort Wayne tendered the appraisers' award on March 5, 2004, four days after the 2004 assessment date.

---

**2.** Ind.Code § 6–1.1–2–4(a) provides in pertinent part: "The owner of any real property on the assessment date of a year is liable for the taxes imposed for that year on the property...." *See* also Ind.Code § 6–1.1–1–9(b) (owner is the holder of legal title in fee); Ind.Code § 6–1.1–1–2 (assessment date is March 1).

Southtown argued Fort Wayne's title should relate back to October 30, 2003, the date the condemnation petition was filed. We agreed, finding persuasive *Chicago Park District v. Downey Coal Co.*, 1 Ill.2d 54, 115 N.E.2d 223 (1953). In that case, the Illinois Supreme Court held that title vests when the just compensation award is paid, but title relates back to the date the condemnation action is filed. *Id.* at 224. In *Southtown*, we summarized the reasons supporting the rule of *Downey Coal:*

> First, the value of condemned land (in Illinois as well as in Indiana) is determined as of the date of the filing of the condemnation action and the condemnee will not be entitled to any increase in the land's value which may occur after that date. *See Bd. of Junior Coll., Dist. 504 v. Carey*, 43 Ill.2d 82, 250 N.E.2d 644, 647 (1969). Second, a condemnor secures the right to obtain title to property on the date it files a petition for condemnation. Thus any interests in the property acquired by another after the filing of the petition are acquired subject to the condemnation proceedings and are necessarily subordinate to the rights of the condemnor. *Id.* at 646. Stated differently,
>
> > [B]etween the time of filing the petition and the time that the award is actually paid by the condemnor, the owner of real estate cannot enter into long term leases, make improvements, or even maintain the property with the hope of reimbursement, and certainly cannot sell it excepting subject to the proceedings then pending.
> >
> > The mere filing of a petition to condemn effectively encumbers the land, imposing a burden upon it, impeding its transfer, and *to that extent destroying the fee-simple estate of the owner.*
>
> *Pub. Bldg. Com'n v. Cont'l Ill. Nat'l Bank & Trust Co.*, 30 Ill.2d 115, 195 N.E.2d 192, 196 (1964) (emphasis added).

*Southtown*, 840 N.E.2d at 409. Following the reasoning of the Illinois courts, we concluded that once Fort Wayne filed its condemnation petition, Southtown held "something less than legal fee title." *Id.* at 410. Because Southtown did not hold legal fee title on March 1, 2004, it was not liable for 2004 real estate taxes.

Graoch argued *Southtown* applies retroactively, and the trial court agreed, reasoning:

> Pronouncements of the law through judicial opinions in civil cases have retrospective as well as prospective effect, except where the pronouncement would impair contracts made, or vested rights acquired, in reliance on an earlier decision. This is the general rule because in theory the law has not changed; the last judicial decision is said to have enunciated the law as it has always existed. *Don Meadows [sic] Motors, Inc. v. Grauman*, 446 N.E.2d 651 (Ind.App.1983) (punitive damages standard applied retroactively); *Klepinger v. Board of Com'rs of County of Miami*, 143 Ind. App. 155, 239 N.E.2d 160 (1968) (county governmental immunity abrogated and precedent of 1878 case re-announced and applied retroactively); See also *Mariga v. Flint*, 822 N.E.2d 620, 626–27 (Ind.App.2005). In the present case the Court concludes that there was no contract between Graoch and the City of Hammond that addressed the situation presented here, and no vested rights in or to the money paid by Graoch was acquired by the City of Hammond. Accordingly, the law as announced in *Southtown, supra*, is applicable and binding upon the parties in this action.

(Appellant's App. at 20.)

The "situation" referenced by the trial court was one in which Graoch would not

owe any property taxes for 2005. That would happen only if *Southtown* applies retroactively. The court's reasoning, therefore, presupposed that *Southtown* applied.

Retroactive application of *Southtown* in this case would impair an existing contract and vested rights. Before *Southtown* was decided, the City had completed the condemnation, the parties had executed the Proration Agreement, and the City had paid the compensation owing to Graoch. Pursuant to the Proration Agreement, the City was entitled to any excess above the taxes actually billed, and this was bargained for by the parties. Graoch appears to argue that Lake County had no vested interest in the tax money until it was due or paid, but cites no authority in support. A plain reading of the property tax statutes is that tax liability accrues on the assessment date. Therefore, retroactive application of *Southtown* in this case would mean reopening a completed condemnation and a previously-executed contract and finding that Graoch did not have to pay taxes that had already accrued.

■ Our Supreme Court has identified three factors to consider when determining whether a judicial opinion in a civil case should be applied only prospectively:

> Appellate court decisions routinely apply to the parties involved, and everyone else, even when addressing an unresolved point of law. In *Bayh v. Sonnenburg,* 573 N.E.2d 398, 406 (Ind.1991), this Court followed the three-prong test employed by the United States Supreme Court to determine when to follow the unusual course of applying a decision prospectively. First, the decision must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly fore-

shadowed. *Id.* (quoting *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971)). Second, we look at the purpose and effect of the rule, and whether retrospective operation will further or retard its operation. *Id.* Finally, we weigh the inequity imposed by retroactive application. *Id.*

*Ray–Hayes v. Heinamann,* 768 N.E.2d 899, 900 (Ind.2002) (on rehearing). These three factors further demonstrate why *Southtown* should not apply in this case.

First, *Southtown* decided a question of first impression. 840 N.E.2d at 396. Our opinion relied extensively on decisions from Illinois. Although we held *Kinsey* was not controlling, neither *Kinsey* nor its progeny foreshadowed the distinction we drew in *Southtown.* Therefore, the first factor weighs against retrospective application.

As to the second factor, the City argues

> retrospective application of the *Southtown* decision impedes its operation, as it creates a potential nightmare for condemnation cases where final compensation has already been tendered.... [A] blanket retroactive application of *Southtown* would allow countless proration agreements and closings in previous eminent domain cases to be unwound....

(Appellant's Br. at 22.) Graoch contends there would be "no mass unwinding of prior condemnation cases," because the issue would probably arise only in condemnation cases that were "filed in 2004 or 2005, assuming they were still pending when *Southtown Properties, Inc.* was decided and assuming the municipality is still holding the property owner's tax payment for 2005 payable in 2006." (Appellee's Br. at 30.) We need not decide whether *Southtown* should apply to condemnation

cases pending when *Southtown* was decided; Graoch's condemnation case was not pending at that time. There is no apparent limit to the number of condemnation cases that could be reopened were we to apply *Southtown* in this case.

As to the equities, Graoch argues "it is impossible to say that equity favors the City keeping $259,140.92 of Graoch's just compensation award." (*Id.*) Graoch's argument assumes we will reverse only the judgment against the City and not the judgment against Lake County.[3] We conclude the equitable result is that the trial court's judgment be reversed in full so that the parties may complete performance of the Proration Agreement. This is fair to Graoch, which, until *Southtown* was decided, apparently was satisfied with its agreement and fully anticipated owing taxes.

For the foregoing reasons, we conclude *Southtown* does not relieve property owners of liability for property tax if condemnation of the property was complete before *Southtown* was decided. Therefore, we reverse the trial court's judgment in full. In addition, it appears the parties' settlement agreement, the agreed order in the condemnation case, and/or the Proration Agreement authorize an award of attorney fees and costs for the prevailing party in a legal action to interpret or enforce those agreements. We remand for a hearing on the issue of attorney fees and costs.

Reversed and remanded.

FRIEDLANDER, J., and BRADFORD, J., concur.

---

**3.** We note Lake County did not oppose Graoch's complaint for declaratory relief, purportedly because Graoch was not seeking monetary damages against the County. (*See* Tr. at 4–5.) Nor has Lake County appealed the judgment against it. To the extent Graoch argues the City lacks standing to challenge the declaratory judgment against Lake County, we disagree. "Under our general rule of standing, only those persons who have a personal stake in the outcome of the litigation and who show that they have suffered or were in immediate danger of suffering a di-

rect injury as a result of the complained-of conduct will be found to have standing." *State ex rel. Cittadine v. Ind. Dep't of Transp.,* 790 N.E.2d 978, 979 (Ind.2003). The City has a stake in the outcome of the declaratory judgment against Lake County because it is undisputed that the City is entitled to keep any money left over after paying the tax bill. Graoch prevented complete performance of the Proration Agreement by obtaining a judgment against Lake County, and therefore we conclude the City may challenge that judgment.