**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 200192-U

Order filed December 23, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| MB FINANCIAL BANK, N.A., as Successor Trustee to a certain trust dated May 9, 1980, known as Trust No. 1252; MB FINANCIAL BANK, N.A., as Successor Trustee to a certain trust dated July 1, 1952, known as Trust No. 1335; NEW WEST, an Illinois Limited Partnership, beneficial owner of Trust No. 1252; NEW BLUFF, an Illinois Limited Partnership, beneficial owner of Trust No. 1335; and BURNHAM MANAGEMENT COMPANY, an Illinois Corporation, as tax assessee, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) ) | Appeal No. 3-20-0192 Circuit No. 18-MR-2346 |
| TIM BROPHY, Treasurer and ex-officio County Collector for Will County, Illinois, | ) ) ) | |
| Defendant-Appellee, | ) ) | |
| and | ) ) | |
| FOREST PRESERVE DISTRICT OF WILL COUNTY; JOLIET PUBLIC SCHOOL DISTRICT 86; JOLIET HIGH SCHOOL DISTRICT 204; JOLIET JUNIOR COLLEGE DISTRICT 525; CITY OF JOLIET; and JOLIET PARK DISTRICT, | ) ) ) ) ) ) ) | Honorable John C. Anderson, |

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Daugherity and Lytton concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The court erred in dismissing the plaintiffs' claim for a refund of their property taxes but did not err in dismissing the actions for declaratory judgment and *mandamus*.

¶ 2     The plaintiffs, MB Financial Bank, N.A., New West, New Bluff, and Burnham Management Company, appeal the circuit court's granting of the motion to dismiss the complaint filed by the defendant, Tim Brophy, and intervenors, Forest Preserve District of Will County, Joliet Public School District 86, Joliet High School District 204, Joliet Junior College District 525, City of Joliet, and Joliet Park District,[1] arguing that the motion should have been denied.

¶ 3                         I. BACKGROUND

¶ 4     The plaintiffs operated Evergreen Terrace I and Evergreen Terrace II as section 8 housing beginning in 1981. On October 7, 2005, the City of Joliet filed a condemnation action against the plaintiffs to acquire fee simple title to Evergreen Terrace I and II by eminent domain. Judgment was ultimately entered in favor of Joliet, and fee simple title to Evergreen Terrace I and II was provided to Joliet on August 25, 2017.

¶ 5     In August 2018, the plaintiffs filed a complaint against the then Treasurer of Will County, Stephen P. Weber, for a refund of property taxes and seeking a declaratory judgment and *mandamus*. The plaintiffs argued that, based on the August 2017 judgment, Joliet retroactively held title to Evergreen Terrace I and II back to October 7, 2005, the date the condemnation action

---

[1]The defendant and the intervenors will collectively be called "the defendants" throughout.

was filed. The plaintiffs stated that from 2005, they paid $6,350,472.61 in property taxes and were entitled to a refund of this amount as Joliet was the true owner of the property during this time and was retroactively exempt from real estate taxation. The plaintiffs argued that payment of the taxes amounted to an overpayment requiring a refund under section 20-175(a) of the Property Tax Code (Code) 35 ILCS 200/20-175(a) (West 2018). The plaintiffs submitted the affidavit of John Jacob Paschen, Jr., the Executive Vice President of Burnham, who stated that failure to pay the real estate taxes for the properties would have been a breach of their agreement with the United States Department of Housing and Urban Development (HUD). The Forest Preserve, Joliet Public School District 86, Joliet High School District 204, Joliet Junior College, the City of Joliet, and the Joliet Park District were allowed to intervene as parties who would be affected by the refund of the taxes.

¶ 6       The defendants filed separate motions to dismiss, some pursuant to section 2-619 and some under section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619, 2-619.1 (West 2018)), stating that the plaintiffs did not file a tax case objection pursuant to section 23-10 of the Code, the taxes paid did not amount to an overpayment under section 20-175(a), the property was not automatically exempt from real estate taxation, and the plaintiffs voluntarily paid the taxes without protest. The plaintiffs filed a response to the motions to dismiss, arguing that Illinois law states that condemnee landowners are not responsible for payment of the property taxes accrued after the condemnation petition was filed. Further, the plaintiffs stated that they were not arguing for a property tax exemption, but solely arguing that they were no longer responsible as a matter of law for the taxes accrued on the properties after the filing of the condemnation complaint. On the court's motion and by agreement of the parties, Tim Brophy, the current treasurer, was substituted for Weber.

3

¶ 7         In a written decision, the court granted the 2-619 motions to dismiss. The court found that the plaintiffs lacked standing to rely on section 20-175(a) because they never sought tax exempt status. The court further found that section 23-25 restricted the court from providing relief to the plaintiffs and the plaintiffs voluntarily paid the taxes without duress. The court found that the declaratory judgment and *mandamus* actions failed for the same reason. In light of its findings on the 2-619 motions, the court did not reach the defendants' 2-615 arguments contained in the section 2-619.1 motions. The court dismissed the case with prejudice. The plaintiffs filed a motion to reconsider, which was denied.

¶ 8                                    II. ANALYSIS

¶ 9         On appeal, the plaintiffs argue that the court erred in granting the motion to dismiss. Specifically, the plaintiffs argue that their "property tax payments of $6,350,472.61 after the date the condemnation petition was filed retroactively became overpayments subject to refund under [section] 20-175(a) because Plaintiffs were retroactively no longer the owners of the Properties after October 7, 2005."[2]

¶ 10        While the defendants in this case filed motions to dismiss under section 2-619 and 2-619.1 of the Code, the court only reached the arguments made under the section 2-619 motions to dismiss. A section 2-619 motion to dismiss admits the sufficiency of the complaint but asserts a defense outside the complaint that defeats it. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. In ruling on a section 2-619 motion to dismiss, the court must construe all pleadings and supporting documents in the light most favorable to the nonmoving party. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367-68 (2003). On appeal, we review a dismissal pursuant

---

[2]We note that the defendants argue that the plaintiffs forfeited this argument by failing to raise it in the trial court. We disagree. A full reading of the record confirms that the plaintiffs did in fact raise this argument.

to section 2-619 *de novo*. *Id.* at 368. Moreover, we also review *de novo* the dismissal of a complaint for lack of standing. *Glisson v. City of Marion*, 188 Ill. 2d 211, 221 (1999).

¶ 11                                                    A. Standing

¶ 12          At the outset, we note that the court found the plaintiffs did not have standing to raise an overpayment under section 20-175(a) because they never sought tax exempt status. The plaintiffs agree that they did not file for tax exempt status but state that it was not necessary that they do so under section 20-175(a) and agree that they would not have qualified for exempt status. Section 20-175(a) stated:

> "In counties other than Cook County, if any property is twice assessed for the same year, or assessed before it becomes taxable, and the erroneously assessed taxes have been paid either at sale or otherwise, or have been overpaid by the same claimant or by different claimants, the County Collector, upon being satisfied of the facts in the case, shall refund the taxes to the proper claimant. When the County Collector is unable to determine the proper claimant, the circuit court, on petition of the person paying the taxes, or his or her agent, and being satisfied of the facts in the case, shall direct the county collector to refund the taxes and deduct the amount thereof, *pro rata*, from the moneys due to taxing bodies which received the taxes erroneously paid, or their legal successors. Pleadings in connection with the petition provided for in this Section shall conform to that prescribed in the Civil Practice Law. Appeals may be taken from the judgment of the circuit court, either by the county collector or by the petitioner, as in other civil cases. A claim for refund shall not be allowed unless a petition is filed within 5 years from the date the right to a refund arose. If a certificate of error results in the allowance of a homestead

5

exemption not previously allowed, the county collector shall pay the taxpayer interest on the amount of taxes paid that are attributable to the amount of the additional allowance, at the rate of 6% per year. To cover the cost of interest, the county collector shall proportionately reduce the distribution of taxes collected for each taxing district in which the property is situated." 35 ILCS 200/20-175(a) (West 2018).

¶ 13       We believe that the circuit court misinterpreted the plaintiffs' argument. They are not arguing that they were exempt from paying taxes. Instead, they are arguing that they are entitled to a refund under section 20-175(a) because they overpaid the taxes as they were not the true owners of the property when Joliet became the owners retroactive to 2005. As evidenced by the text of section 20-175(a) stated above, the plaintiffs' lack of seeking an exemption provides no barrier to their standing to argue the application of the overpayment statute.

¶ 14                          B. Taxes During a Condemnation Proceeding

¶ 15       Next, we turn to the question of whether the plaintiffs properly brought the action for reimbursement of their taxes. To answer this question, we first consider whether the plaintiffs were liable for the taxes, and then consider whether the action they brought under section 20-175(a) and for declaratory judgment was the proper vehicle to seek reimbursement.

¶ 16                                      1. Tax Responsibility

¶ 17       The owner of a property on January 1 of any given year is responsible for the taxes on that property. 35 ILCS 200/9-175 (West 2018). However, our supreme court has consistently held that where there is a taking of title under eminent domain, the date of the filing of the condemnation petition is intended to be the termination date for the responsibility for taxes on the land, and real estate taxes for the year in which the petition is filed should be prorated as of the date of the filing

6

of the condemnation petition. See, *e.g.*, *Board of Junior College, District 504 v. Carey*, 43 Ill. 2d 82 (1969); *Public Building Comm'n of Chicago v. Continental Illinois National Bank & Trust Co.*, 300 Ill. 2d 115 (1963); *Chicago Park District v. Downey Coal Co.*, 1 Ill. 2d 54 (1953); *City of Chicago v. McCausland*, 379 Ill. 602 (1942). In *Carey*, the supreme court invalidated a portion of a statute, stating that it "would make the condemnee liable for taxes on land when in law he had become divested of title to the land. The section would unconstitutionally effect a taking of private property for public use without just compensation." *Carey*, 43 Ill. 2d at 86. While these cases concern liens placed on the land for unpaid taxes during a condemnation proceeding, we find that such law is equally applicable, here, where the plaintiffs continued to pay the taxes during the pendency of the condemnation action. In reaching these decisions, the supreme court has noted that, in condemnation proceedings, considerable time may elapse before a judgment is reached, and the municipality could decide to abandon the action at any time. See *McCausland*, 379 Ill. at 606. It would be nonsensical to hold that a condemnee who fails to pay taxes during the pendency of the condemnation proceedings is not liable for the taxes but find liable a condemnee who continues to pay the taxes to protect its interest should it win the lawsuit or the municipality abandon the proceedings.

¶ 18    Here, as the parties agree, after the August 2017 judgment Joliet obtained title to the properties retroactive to October 7, 2005, under Illinois law. *Downey Coal Co.*, 1 Ill. 2d at 57; *Forest Preserve District of Du Page County v. West Suburban Bank*, 161 Ill. 2d 448, 455 (1994). Therefore, as of October 7, 2005, Joliet was the owner of the property, was responsible for the taxes, and the plaintiffs may seek reimbursement of such paid taxes.

¶ 19    Though the defendants agree that Joliet's ownership of the property is retroactive to the date the condemnation action was filed, they argue Joliet only became responsible for the real

7

estate taxes from the date of the taking judgment, not the retroactive date of ownership. In support of this position, they cite *Forest Preserve District of Du Page County v. First National Bank of Franklin Park*, 2011 IL 110759. However, in that case the court solely considered which date should be used to value the property for just compensation, and specifically stated that this was a question separate from the question of whether landowners were liable for property taxes assessed after the condemnation was filed. *Id.* ¶ 45. In fact, the supreme court specifically stated:

> "A party is liable for taxes on the property until compensation is paid and the landowner relinquishes title, *but he may be reimbursed by the county for the taxes paid dating back to the filing of the complaint*. Yet, the condemning authority could abandon the taking at any time before acquiring title, leaving the landowner liable for the taxes without any hope of reimbursement." *Id.* ¶ 45. (Emphasis added.)

This supports our holding that a condemnee who pays the taxes on the property during condemnation proceedings is eligible for reimbursement. Moreover, the cases cited above (*supra* ¶ 17) remain good law.

¶ 20    We find further support for this decision in section 9-185 of the Code, which states that when a municipality acquires property by condemnation and it is exempt from taxation under the Code, it is exempt as of the date the condemnation petition is filed. 35 ILCS 200/9-185 (West 2018); *Application of County Treasurer and Ex Officio County Collector of Lake County v. Drobnick*, 13 Ill. App. 3d 927, 930 (1973). Therefore, regardless of whether the property in this case was tax exempt when it was condemned by Joliet, the legislature clearly intended the municipality to be liable or exempt from taxes from the date the petition was filed.

¶ 21                                   2. Section 20-175(a)

8

¶ 22    Having determined that Joliet was responsible for the taxes from the date the condemnation petition was filed, we turn to the question of whether the proper vehicles for raising this claim was under section 20-175(a) and/or actions seeking declaratory judgment or *mandamus*, as the plaintiffs raised in their complaint.

¶ 23    As set out above, the pertinent portion of section 20-175(a) states:

> "In counties other than Cook County, if any property is twice assessed for the same year, or assessed before it becomes taxable, and the erroneously assessed taxes have been paid either at sale or otherwise, or have been overpaid by the same claimant or by different claimants, the County Collector, upon being satisfied of the facts in the case, shall refund the taxes to the proper claimant." 35 ILCS 200/20-175(a) (West 2018).

While the voluntary payment doctrine provides that a taxpayer may not recover taxes that are voluntarily paid, this section provides an exception to that doctrine. *Alvarez v. Pappas*, 229 Ill. 2d 217, 221 (2008).

¶ 24    To determine the meaning of an overpayment under the statute, in *Alvarez* the supreme court stated that "Webster's dictionary defines 'overpayment' as: 'payment in excess of what is due.' " *Id.* at 225. The supreme court also quoted the U.S. Supreme Court case of *U.S. v. Dalm*, 494 U.S. 596, 609 n.6 (1990), stating "the commonsense interpretation of 'overpayment' is that 'a tax is overpaid when a taxpayer pays more than is owed, for whatever reason or no reason at all.' " *Alvarez*, 229 Ill. 2d at 225. As stated above, the plaintiffs were not responsible for the tax payments related to the retroactively owned property. We find that it is cognizable for the plaintiffs to bring their claim under section 20-175(a).

¶ 25    The defendants argue that, even if the plaintiffs could bring an action under section 20-175(a), it would be barred by the five-year statute of limitations contained in that section. Section 20-175(a) states, *inter alia*, "A claim for refund shall not be allowed unless a petition is filed within 5 years from the date the right to a refund arose." 35 ILCS 200/20-175(a) (West 2018).While the right to request a refund under this section "*generally* accrues at the time the taxes are paid" (*Alvarez*, 229 Ill. 2d at 234 (emphasis added)), here, the right to a refund did not arise until 2017, when the judgment was entered for Joliet. Therefore, the plaintiffs' claim was properly brought within the statute of limitations in 2018.

¶ 26                                3. Declaratory Judgment

¶ 27    To the extent that the plaintiffs may not be successful under a claim under section 20-175(a), they argue that they could also bring actions for declaratory judgment and *mandamus*.

> "It has been held *** that the general rule requiring a taxpayer to seek the relief provided by statute is subject to two exceptions: a taxpayer need not look to the remedy at law but may seek injunctive or declaratory relief in [the] circuit court where the tax or assessment is unauthorized by law or where it is levied upon property exempt from taxation." *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 296 (2010).

To claim that a tax is "unauthorized by law" the complaint must allege that the tax itself was invalid or that the assessor lacked authority or discretion to impose the tax as applied to the taxpayers. *Lackey v. Pulaski Drainage District*, 4 Ill. 2d 72, 78 (1954). We do not believe that the tax was unauthorized by law. The property was properly assessed and taxed, the question is who owed the taxes, which we do not believe is a question of unauthorized taxes. The plaintiffs have abandoned

their claims that the property was tax exempt. Thus, the claims for declaratory judgment and *mandamus* were properly dismissed.

¶ 28                                    C. Tax Objection

¶ 29            The defendants argue that in order to seek a refund of the taxes, it was necessary for the plaintiffs to pay the taxes under protest and file a tax objection in the circuit court. 35 ILCS 200/23-5, 23-15 (West 2018). We disagree. First, we note that section 20-175(a) as set out above (*supra ¶* 12) does not require the filing of an objection or paying under protest in order to seek a refund under that section.

¶ 30            Second, we agree with the plaintiffs that an objection to the taxes was not ripe for adjudication at the time they were paid. Courts do not decide hypotheticals or render advisory opinions. *Simcox v. Simcox*, 131 Ill. 2d 491, 498 (1989); *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 10. The basic rationale of the ripeness doctrine is to prevent the courts from entangling themselves in abstract disagreements through premature adjudication. *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 490 (2008). At the time the taxes were paid, any objection to the taxes was speculative and hypothetical: the plaintiffs might have lost their ownership of the property, but they might have retained their ownership through prevailing in the litigation or through Joliet abandoning the claim of condemnation.

¶ 31            In sum, we uphold the court's dismissal of the declaratory judgment and *mandamus* actions but reverse the dismissal of the claim under section 20-175(a). We note that the court did not consider the section 2-615 arguments presented by the defendants, but the defendants' section 2-615 arguments were much the same as the section 2-619 arguments considered, here. Thus, we remand for the court to procedurally consider those arguments and for further proceedings consistent with this decision.

11

¶ 32                                  III. CONCLUSION

¶ 33        The judgment of the circuit court of Will County is affirmed in part, reversed in part, and

remanded.

¶ 34        Affirmed in part, reversed in part, and remanded.