**2023 IL 128252**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 128252)

MB FINANCIAL BANK, N.A., *et al*., Appellees, v. TIM BROPHY, in His Official Capacity as County Treasurer and *ex officio* County Collector of Will County, *et al*., Appellants.

*Opinion filed September 21, 2023.*

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Holder White, Rochford, and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1     At issue in this case is whether the former owners of property that was taken by the City of Joliet (City) through eminent domain are entitled to a refund of the property taxes they paid between the date the City filed its condemnation complaint and the date it ultimately took possession of the property. Relying on *City of Chicago v. McCausland*, 379 Ill. 602 (1942), the appellate court held that, as a

matter of law, once the condemnation proceedings were complete, the City became the owner of the property retroactive to the date the condemnation complaint was filed and, therefore, the former property owners were entitled to a refund. 2021 IL App (3d) 200192-U. For the reasons that follow, we reverse the judgment of the appellate court.

¶ 2                                    BACKGROUND

¶ 3        On October 7, 2005, the City filed a condemnation complaint seeking to acquire, by eminent domain, a low-income apartment complex known as Evergreen Terrace. The property was owned and managed by the plaintiffs in this case, MB Financial Bank, N.A., as successor trustee to a certain trust dated May 9, 1980, known as trust No. 1252; New West, an Illinois limited partnership and beneficial owner of trust No. 1252; MB Financial Bank, N.A., as successor trustee to a certain trust dated July 1, 1982, known as trust No. 1335; New Bluff, an Illinois limited partnership and beneficial owner of trust No. 1335; and Burnham Management Company, the tax assessee for trust Nos. 1252 and 1335.

¶ 4        Because the United States Department of Housing and Urban Development had an interest in the property, the condemnation action was removed to federal court. Thereafter followed almost 12 years of litigation, with the City acquiring fee-simple title to the property on August 25, 2017.[1]  While the condemnation action was being litigated, the apartment complex remained in operation, and the plaintiffs continued to pay the property taxes that were due without filing any protest.

¶ 5        On August 24, 2018, the plaintiffs filed a three-count, tax objection complaint in the circuit court of Will County against the defendant, Tim Brophy, in his official capacity as county treasurer and *ex officio* county collector of Will County.[2]  The complaint sought the refund of over $6 million in property taxes paid between the date the City filed its condemnation complaint and the date it acquired the plaintiffs'

---

[1]For a complete account of the condemnation proceedings, see *City of Joliet v. Mid-City National Bank of Chicago*, No. 05 CV 6746, 2014 WL 4667254 (N.D. Ill. Sept. 17, 2014).

[2]The complaint was originally filed against Stephen P. Weber, in his official capacity as Will County Treasurer. Tim Brophy was later substituted as defendant when he became treasurer of the county. See 735 ILCS 5/2-401(b) (West 2018).

property. Count I of the complaint alleged that the plaintiffs were entitled to the refund under section 20-175(a) of the Property Tax Code (35 ILCS 200/20-175(a) (West 2018)). This provision states that a county collector "shall refund" taxes that have been "overpaid." Count II sought a declaratory judgment that the defendant was required to refund the property taxes to plaintiffs. Count III sought a writ of *mandamus* directing the defendant to refund the tax payments. Underlying all three counts of the plaintiffs' complaint was the same legal argument. The plaintiffs maintained that, under Illinois law, "once title to property acquired by condemnation vests with the condemning authority, it vests retroactively to the date of filing the condemnation petition" and, therefore, "the landowner is entitled to a refund for any taxes paid after the date of filing."

¶ 6 After the plaintiffs' complaint was filed, the trial court granted leave to intervene to the Forest Preserve District of Will County, Joliet Public School District 86, Joliet High School District 204, Joliet Junior College District 525, the City of Joliet, and the Joliet Park District as parties that would be affected by a refund of the plaintiffs' property taxes. The defendant and the intervenors (hereinafter, the defendants) subsequently filed motions to dismiss under both sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2018)).

¶ 7 In a written order, the trial court granted the defendants' section 2-619 motions and dismissed the plaintiffs' complaint in its entirety. The trial court read the plaintiffs' complaint as alleging that, because the City's acquisition of the property was effective retroactive to the date the condemnation complaint was filed, the property was retroactively exempt from real estate taxation from that date. The court then concluded that the plaintiffs lacked standing and were statutorily barred from bringing such a claim because only the City itself could seek tax-exempt status. In addition, the trial court concluded that the complaint had to be dismissed because the plaintiffs had not paid any of their property taxes under protest and, therefore, any claim for relief was barred by the voluntary payment doctrine.

¶ 8 On appeal, the appellate court reversed in part and affirmed in part. 2021 IL App (3d) 200192-U. The appellate court first determined that the trial court had misinterpreted the plaintiffs' complaint and that the plaintiffs were not, in fact, contending they were exempt from paying taxes. Rather, as the court explained, in

count I of the complaint, the plaintiffs were seeking a refund under section 20-175(a) of the Property Tax Code because they had "overpaid" their taxes. *Id.* ¶ 13.

¶ 9 The appellate court then found that the plaintiffs were entitled to a refund. Citing a line of cases beginning with *McCausland*, 379 Ill. 602, the appellate court concluded that, once the condemnation proceedings were complete and title to the property was conveyed to the City in 2017, the title "related back" to the date the condemnation complaint was filed in 2005. Because the City therefore "owned" the property during the 12-year period the condemnation case was being litigated, the City was retroactively responsible for the property taxes during that time. 2021 IL App (3d) 200192-U, ¶¶ 15-20.

¶ 10 Further, the appellate court read section 20-175(a) as authorizing a property tax refund when the property owner is not "legally responsible" for the tax (*id.* ¶¶ 22-25) and that, to obtain the refund, the property owner does not have to show the tax was paid under protest (*id.* ¶¶ 29-30). Accordingly, the appellate court held that the plaintiffs have a cognizable claim for a refund under section 20-175(a) and reversed the trial court's dismissal of count I. *Id.* ¶ 31.

¶ 11 With respect to counts II and III, the appellate court stated that, in order to obtain declaratory or *mandamus* relief, the plaintiffs had to establish the property taxes were " 'unauthorized by law,' " meaning that the taxes were invalid or that the tax assessor lacked the authority to impose them. *Id.* ¶ 27. The appellate court concluded that the plaintiffs' complaint did not contain such allegations and, therefore, counts II and III were properly dismissed by the trial court. *Id.*

¶ 12 Finally, the appellate court noted that the trial court had not addressed the defendants' section 2-615 motions but that these motions contained "much the same *** arguments" that had been considered and rejected by the appellate court. *Id.* ¶ 31. The appellate court therefore remanded the cause to the trial court to enter judgment on those motions and for further proceedings consistent with the appellate court's decision. *Id.*

¶ 13 We allowed the defendants' petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2021). The plaintiffs seek cross-relief from the appellate court's judgment affirming the dismissal of counts II and III.

¶ 14                                    ANALYSIS

¶ 15        The trial court dismissed the plaintiffs' complaint pursuant to section 2-619 of the Code of Civil Procedure. Our review of the trial court's dismissal order is *de novo*. *Strauss v. City of Chicago*, 2022 IL 127149, ¶ 53.

¶ 16        Section 9-175 of the Property Tax Code states that the "owner of property on January 1 in any year shall be liable for the taxes of that year." 35 ILCS 200/9-175 (West 2018). The "key elements" for defining ownership are "control and the right to enjoy the benefits of the property." *People v. Chicago Title & Trust Co.*, 75 Ill. 2d 479, 489 (1979). Nothing in the plaintiffs' complaint in this case alleges that they did not control their property or that they were deprived of the right to enjoy its benefits while the City's condemnation complaint was being litigated. See *Forest Preserve District of Du Page County v. West Suburban Bank*, 161 Ill. 2d 448, 455-56 (1994) (property owners in a non-quick take condemnation suit "continue to enjoy title and the rights associated with possession of the property pending the payment of compensation"). Nevertheless, the appellate court concluded that the plaintiffs were not the owners of the property during the 12-year period from 2005 to 2017. In so holding, the appellate court relied on a rule first articulated by this court in *McCausland*.

¶ 17        At issue in *McCausland* was whether a lien for unpaid property taxes that accrued after a condemnation action had been filed could be deducted from the just compensation award given to the property owners at the conclusion of the condemnation proceedings. *McCausland*, 379 Ill. at 604. Addressing this issue, the court stressed the importance of identifying *when*, in an eminent domain proceeding, a taking occurs. The court observed that one statement of law then in effect held that property was "regarded as being taken at the time the petition for eminent domain is filed." *Id.* at 604-05. Another statement of law, however, held " 'that the title to property condemned does not vest until damages awarded by the judgment are paid.' " *Id.* at 605 (quoting *People ex rel. Stuckart v. Price*, 282 Ill. 519, 522 (1918)). The court explained that the "apparent conflict between these two statements of the law" could be resolved by recognizing that, while the right to title vests as of the date compensation is paid, the titled acquired "relates back" to the time the condemnation action was filed. *Id.*

¶ 18    *McCausland* also stressed the importance of identifying *when* the value of the property was assessed for purposes of establishing the just compensation award. The court noted that, under the law then in effect, the value of the property in a condemnation proceeding was fixed as of the time the condemnation action was filed. *Id.* at 604.

¶ 19    With the foregoing principles in place, *McCausland* held that the lien for unpaid taxes could not be deducted from the property owners' just compensation award. The court explained that when the compensation award "is actually paid, which is the event that completes the taking, the title acquired relates back to the time when the [condemnation action was filed and the valuation was made], and it is only the liens that existed at that time that are liens against the fund." *Id.* at 606. Although property taxes continued to accrue while the condemnation action was being litigated, the property owner could not be held responsible for those taxes because the taking effectively took place on the date the action was filed. *Id.* at 607. As the court stated, one who is "not the owner of the property at the time the tax was imposed" cannot be responsible for the tax, and "[t]o permit taxes of subsequent years to be charged as a lien against just compensation for land, title to which relates back to a time before their assessment, would infringe the constitutional provision that property shall not be taken for public use without just compensation." *Id.*

¶ 20    Subsequent decisions from this court repeated the rule set forth in *McCausland* that the title acquired by the condemning authority relates back to the date the condemnation action is filed and the value of the property is fixed. See, *e.g.*, *Board of Junior College District 504 v. Carey*, 43 Ill. 2d 82, 85 (1969) ("though the Board's right to title vested when the award was deposited, the Board's title is deemed to have been acquired on the date of the filing of the petition"); *Public Building Comm'n of Chicago v. Continental Illinois National Bank & Trust Co. of Chicago*, 30 Ill. 2d 115, 119 (1963) (" 'When the compensation has been paid or deposited, the condemnor's title, as a matter of law, relates back to the date the petition was filed, and any liens upon the property which existed at that time are transferred and "attached" to the award' " (quoting *City of Chicago v. R.R. Building Corp.*, 24 Ill. 2d 20, 22 (1962))); *Chicago Park District v. Downey Coal Co.*, 1 Ill. 2d 54, 57 (1953) ("title acquired by the condemner upon payment of the award in condemnation relates back to the date on which the petition *** is filed").

¶ 21 The appellate court in this case acknowledged that *McCausland* had addressed only the situation where a lien was placed on land for taxes that had gone unpaid during a condemnation proceeding. The appellate court determined, however, that *McCausland* applies here, stating that

> "[i]t would be nonsensical to hold that a condemnee who fails to pay taxes during the pendency of the condemnation proceedings is not liable for the taxes but find liable a condemnee who continues to pay the taxes to protect its interest should it win the lawsuit or the municipality abandon the proceedings." 2021 IL App (3d) 200192-U, ¶ 17.

The appellate court therefore held that the plaintiffs were not legally responsible for any property taxes paid after the City's condemnation complaint was filed in 2005. We disagree.

¶ 22 The problem with relying on *McCausland* in this case is that, following this court's decision in *Forest Preserve District of Du Page County v. First National Bank of Franklin Park*, 2011 IL 110759, *McCausland* is no longer good law. In *First National Bank of Franklin Park*, this court clarified when property is deemed taken in an eminent domain proceeding and when the valuation of the property must take place. Relying on the United States Supreme Court's decision in *Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1 (1984), this court held that a taking in Illinois occurs on the date the government deposits the compensation award to the property owner and acquires the title and right to possess the property. *First National Bank of Franklin Park*, 2011 IL 110759, ¶ 40. With respect to valuation, this court stressed that, under *Kirby*, the value of the property cannot be fixed as of the date the condemnation action is filed. *Id.* ¶¶ 45-46. As *Kirby* explained, if the property is assessed on a date that provides the property owner "substantially less than the fair market value of his property on the date the [government] tenders payment, it violates the Fifth Amendment." *Kirby*, 467 U.S. at 17. Thus, to comply with constitutional requirements, the property owner must be given the opportunity to seek an appraisal of the property if it has risen in value between the date the condemnation action is filed and the date compensation is paid. *First National Bank of Franklin Park*, 2011 IL 110759, ¶ 70.

¶ 23 The relation back rule set forth in *McCausland* was necessary only because, at that time, a taking was said to occur on the date the condemnation action was filed.

See *McCausland*, 379 Ill. at 604-05. After *First National Bank of Franklin Park*, this is no longer the case. The relation back rule cannot stand because, under current law, there is no taking to relate back to.

¶ 24    *McCausland* also based its holding on the premise that the value of the condemned property was fixed as of the date the condemnation action was filed. See *id.* at 604. This point was important because it meant that the property owner was not entitled to any increase in value after the date the condemnation action was filed. And, having been divested of that aspect of ownership, it followed that the owner should not have to pay taxes during that time. However, in light of *Kirby* and *First National Bank of Franklin Park*, this reasoning also is no longer accurate. Property owners now have a constitutional right to have their property valued at the time compensation is paid. Further, the General Assembly has provided a statutory mechanism for determining the value of the property in compliance with *Kirby*. See 735 ILCS 30/10-5-60 (West 2018).

¶ 25    *McCausland* was based on the propositions that a taking occurs and the valuation of the property is fixed at the time the condemnation action is filed. After *First National Bank of Franklin Park*, neither of these things is true. The legal rationale underlying *McCausland* has thus been eliminated.

¶ 26    Despite the foregoing, the plaintiffs nevertheless maintain that *McCausland* remains good law and, in support, point to language in *First National Bank of Franklin Park*. There, this court took note of *McCausland* but concluded that the decision did not have any bearing on our decision "regarding the time of a taking for purposes of the holding in *Kirby*." *First National Bank of Franklin Park*, 2011 IL 110759, ¶ 45. This court also stated that "[a] party is liable for taxes on the property until compensation is paid and the landowner relinquishes title, but he may be reimbursed by the county for the taxes paid dating back to the filing of the complaint." *Id.* Relying on this statement, the defendants contend that this court has already determined that *McCausland* survives our decision in *First National Bank of Franklin Park*. Again, we disagree.

¶ 27    "A judicial opinion is a response to the issues before the court *** [and] must be read in the light of the issues that were before the court for determination." *Nix v. Smith*, 32 Ill. 2d 465, 470 (1965); see also *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 189 (2005); *Cohens v. Virginia*, 19 U.S.

(6 Wheat.) 264 (1821). This court's statement in *First National Bank of Franklin Park* that a landowner could receive reimbursement for taxes paid dating back to the filing of the complaint was merely a statement of existing law. It was not a holding or analysis of that position. The continued viability of *McCausland* was not at issue in *First National Bank of Franklin Park* and, thus, was never considered by this court. Indeed, this court expressly stated that *McCausland* had no bearing on the questions before it. *First National Bank of Franklin Park*, 2011 IL 110759, ¶ 45. *McCausland*'s viability is before us now for the first time. Nothing said about *McCausland* in *First National Bank of Franklin Park* dictates the result here.

¶ 28     The plaintiffs also suggest that overruling *McCausland* would call into question decisions such as *In re Application of County Collector of Lake County*, 13 Ill. App. 3d 927 (1973). In that case, a petition was filed by a park district to condemn certain property. *Id.* at 928. After the petition was filed and while that action was being litigated, the property was sold to a third party at a tax sale for unpaid taxes. *Id.* at 929. The appellate court voided the tax sale based on the relation back rule, finding that title had passed to the park district when the condemnation petition was filed. *Id.* at 930.

¶ 29     As the defendants point out, the result in *County Collector of Lake County* is not at risk because of this court's decision in *Mills v. Forest Preserve District of Cook County*, 345 Ill. 503 (1931). In that case, this court explained that, with the filing of a condemnation action,

> "[the condemning authority] acquires the right to obtain the title to the property *** and rights acquired in the property after that time are subject to the pending suit and subordinate to the rights of the petitioner. [Citation.] The effect of filing a petition for condemnation creates no different situation from that produced by the beginning of any other suit involving a lien upon or claim of title to the land superior to that of an apparent owner of the title in possession, whether he has an unincumbered title in fee or not. The apparent owner in such a case, however good his title, holds it subject to the result of the suit, and cannot convey it, pending the suit, except subject to whatever decree may be rendered." *Id.* at 509-10.

In light of *Mills*, the relation back rule is unnecessary to preserve decisions such as *County Collector of Lake County*. The condemning authority acquires rights superior to all subsequent rights as soon as the condemnation action is filed.

¶ 30    Overruling *McCausland* necessarily implicates *stare decisis*. However, overruling precedent is appropriate "when the intervening development of the law has 'removed or weakened the conceptual underpinnings from the prior decision, or where the later law has rendered the decision irreconcilable with competing legal doctrines or policies.' " *Neal v. United States*, 516 U.S. 284, 295 (1996) (quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 173 (1989)); *People v. Castleberry*, 2015 IL 116916. That is the case here. The legal premises on which *McCausland* rested—that a taking occurs at the time a condemnation action is filed and that the valuation of the property is fixed at that point—no longer exist. Accordingly, *McCausland* is overruled.

¶ 31    Apart from *McCausland*, the appellate court stated that it found support for its decision in section 9-185 of the Property Tax Code (35 ILCS 200/9-185 (West 2018)). That statute provides that property acquired for a use that is exempt from taxation shall be exempt on the date of the right of possession, "except that property acquired by condemnation is exempt as of the date the condemnation petition is filed." *Id.* Based on this language, the appellate court concluded that the legislature intended the City to be "liable" for taxes from the date it filed its condemnation complaint. 2021 IL App (3d) 200192-U, ¶ 20. This is incorrect.

¶ 32    Section 9-185 does not state that a condemning authority is "liable" for taxes from the date a condemnation action is filed. Rather, it states that the property is "exempt." The statute is a response to the relation back rule created by this court and makes clear that, *if* the relation back rule is in effect, then the tax-exempt status of the property will relate back to the date the condemnation action was filed. However, nothing in the statute requires the continued existence of the relation back rule.

¶ 33    Finally, the plaintiffs argue that the mere act of filing a condemnation complaint burdened their property and it would therefore be unfair to require them to pay the property taxes that accrued during the condemnation proceeding. This contention is unpersuasive.

¶ 34 The filing of the condemnation complaint in 2005 was not a taking. See *First National Bank of Franklin Park*, 2011 IL 110759, ¶ 40. The plaintiffs remained the owners of the property until 2017. During that 12-year period, they enjoyed the continued use of their property, retaining the right to any profits generated by the apartment complex and the right to receive the same governmental services provided to all property owners in the City. Given these facts, it would be unreasonable to find that the plaintiffs are relieved from having to pay any of the property taxes that accrued during that time. To the extent the plaintiffs are contending that the filing of the condemnation complaint was an encumbrance on the land that reduced the fair value of the property, such that their annual taxes should have been less than they were, that issue is not before us. There is no indication in the record that the plaintiffs ever argued that their annual taxes should be reduced because a condemnation complaint was filed.

¶ 35 As noted, all three counts of the plaintiffs' complaint rested on *McCausland* and the relation back rule set forth in that decision. Having overruled *McCausland*, we hold that the appellate court erred in reversing the trial court's dismissal of count I. For the same reason, we also deny the plaintiffs' request for cross-relief from the appellate court's affirmance of the dismissal of counts II and III of the complaint.

¶ 36 CONCLUSION

¶ 37 For the foregoing reasons, the judgment of the appellate court reversing the trial court's dismissal of count I is reversed. The judgment of the appellate court affirming the dismissal of counts II and III is affirmed. The judgment of the trial court dismissing plaintiffs' complaint is affirmed.

¶ 38 Appellate court judgment affirmed in part and reversed in part.

¶ 39 Circuit court judgment affirmed.